UNITED STATES of America,
Plaintiff–Appellee,

v.

Jose Noel GARCIA, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Luis Alberto GARIBALDI–GOMEZ,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Geraldo PRIETO–MARTINEZ,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Fernando ALCAREZ–OCHOA,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Benito RUBIO–GARCIA, Defendant–
Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Israel AGUILAR–PACHECO,
Defendant–Appellant.

Nos. 92–10494, 92–10607, 92–10661, 92–
10664, 92–10665 and 92–10667.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 1, 1993.

Decided Feb. 8, 1994.

Jared O. Smith (for Noel Garcia), Tempe,
Arizona; Lynn T. Hamilton (for Garibaldi–
Gomez); Mesa, Arizona; Daniel Carrasco,
Jr. (for Prieto–Martinez), Phoenix, Arizona;
Thomas Martinez (for Alcarez–Ochoa), Ha-
gen, Boyle & Jones, Phoenix, Arizona; Phil
Noland (for Rubio–Garcia), Tucson, Arizona;
and Craig Mehrens (for Aguilar–Pacheco),
Phoenix, Arizona.

Joseph C. Welty, Assistant United States
Attorney, Phoenix, Arizona, for the plaintiff-
appellee.

Before: ALARCÓN, LEAVY and
KLEINFELD, Circuit Judges.

ALARCON, Circuit Judge:

Fernando Alcarez–Ochoa (Alcarez–Ochoa) and Benito Rubio–Garcia (Rubio–Garcia) appeal from their judgment of conviction for possession of cocaine with the intent to distribute it, and conspiracy to distribute 500 kilograms of cocaine. They contend that the court erred prejudicially in admitting the testimony of Drug Enforcement Administration Special Agent Tim Sellers concerning incriminating statements made by Alcarez–Ochoa and Rubio–Garcia during a narcotics transaction which were translated into English by Jose Garcia, a co-conspirator. We affirm because we conclude that the district court properly applied the relevant factors set forth in *United States v. Nazemian*, 948 F.2d 522 (9th Cir.1991), in admitting the testimony of Special Agent Sellers. In an unpublished memorandum decision filed today, we address the remainder of appellants' challenges to their convictions.

## I.

Alcarez–Ochoa and Rubio–Garcia were members of a conspiracy that agreed to sell 500 kilograms of cocaine to Special Agent Sellers, who was acting in an undercover capacity. On June 17, 1991, Alcarez–Ochoa and Rubio–Garcia, along with other members of the conspiracy, spoke at length with Special Agent Sellers regarding the 500 kilogram drug transaction along with the possibility of arranging future cocaine deals. These discussions occurred at a hotel in Tucson, Arizona. Neither Rubio–Garcia nor Alcarez–Ochoa spoke English, and Special Agent Sellers did not speak Spanish fluently. Therefore, their statements were translated by Jose Garcia, a co-conspirator of Alcarez–Ochoa and Rubio–Garcia. Jose Garcia had initiated the negotiations with Special Agent Sellers.

On June 18th, Special Agent Sellers spoke again with Alcarez–Ochoa at a residence located in Tucson, Arizona. While awaiting the delivery of the cocaine, Jose Garcia was present and translated their conversation. Alcarez–Ochoa, Jose Garcia, and additional co-conspirators were arrested within minutes after they showed Special Agent Sellers and Special Agent Michael Carver 40 one-kilo-gram bricks of cocaine which were located in a bedroom at the residence. Special Agent Sellers and Special Agent Carver subsequently departed for the hotel, where they arrested Rubio–Garcia in his room.

## II.

Alcarez–Ochoa and Rubio–Garcia contend that the district court erred by admitting the testimony of Special Agent Sellers regarding the statements they made in Spanish while in the officer's presence on June 17th and 18th. We review alleged Confrontation Clause violations de novo. *United States v. George*, 960 F.2d 97, 99 (9th Cir. 1992). If a violation of the Confrontation Clause is demonstrated, the Government must persuade this court that the error is harmless beyond a reasonable doubt. *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986).

Alcarez–Ochoa and Rubio–Garcia cite *United States v. Nazemian*, 948 F.2d 522 (9th Cir.1991), in support of their argument. In *Nazemian*, the district court allowed an undercover agent from the Drug Enforcement Administration (DEA) to relate the statements made in his presence by the defendant. The defendant's words were translated by a friend of the officer's confidential informant. *Id.* at 525. The interpreter did not testify. *Id.* Nazemian argued that it was error to permit the DEA agent to testify regarding statements made in a language he did not understand. *Id.* We noted in *Nazemian* that whether the DEA agent's testimony created a Confrontation Clause or a hearsay problem depended upon who was considered the declarant. If the translator is acting as an agent of the defendant, his pre-arrest statements are admissible as admissions, and are not hearsay. *Id.* at 525–26. We determined that the question whether "the translated statements fairly should be considered the statements of the speaker" required an analysis of the facts on a case-by-case basis. *Id.* at 527. We reasoned that the following four factors should be considered when making this evaluation: "(1) which party supplied the interpreter, (2) whether the interpreter had any motive to mislead or distort, (3) the interpreter's qualifications

and language skill, and (4) whether actions taken subsequent to the conversation were consistent with the statements as translated." *Id.*

■ Alcarez–Ochoa and Rubio–Garcia argue that Jose Garcia was not supplied by either party but rather was acting as a middleman who stood to profit if the deal was consummated. A review of the record supports the district court's finding that Jose Garcia was "on the selling side of the transaction" and was more closely aligned with the co-conspirators than with the purchaser, Special Agent Sellers.

At the time the conversation occurred, Jose Garcia was acting on behalf of his co-conspirators to bring about the successful completion of a cocaine transaction. While it is true that Jose Garcia had been promised $1,000 for each kilogram he sold, it was Jose Garcia who brought his suppliers into the transaction. Like real estate agents in some states, Jose Garcia represented both the buyer and the seller. He was not, however, knowingly representing the Government.

Alcarez–Ochoa and Rubio–Garcia also assert that Jose Garcia had a motive to mislead Special Agent Sellers because his interest was to ensure that the deal was completed in order to obtain his commission. The record does not support this argument. The challenged statements concerned the delivery of 500 kilograms of cocaine and whether the purchase money or narcotics would be shown first. Precisely because Jose Garcia stood to receive $500,000 if the transaction was consummated, he would not have misrepresented the buyer's or sellers' conditions for the exchange because any falsehood would be readily apparent.

Alcarez–Ochoa and Rubio–Garcia contend that Jose Garcia was not a reliable translator. Special Agent Sellers testified that Jose Garcia indicated that he could speak Spanish and would serve as a translator for the group. Special Agent Sellers had previously heard Jose Garcia speak Spanish. The officer also knew that Jose Garcia was from a Spanish speaking family whose members had business dealings in Mexico. In this matter, Jose Garcia served as a translator during multiple conversations with the co-conspira-

tors. If Jose Garcia had either lied or misinterpreted the translated communications, the meetings between Special Agent Sellers and the co-conspirators would have concluded quickly since the parties would have been unable to establish a meeting of the minds regarding the 500 kilogram drug transaction. *See Nazemian,* 948 F.2d at 528 (interpreter's competence demonstrated by serving as translator during multiple meetings).

The district court found that Special Agent Sellers was able to confirm, through his understanding of Spanish, that Jose Garcia had the requisite qualifications and language skills to translate accurately. The trial judge also noted that Special Agent Sellers' partial Spanish speaking ability distinguished this matter from the circumstances in *Nazemian.* These findings are not clearly erroneous. Special Agent Sellers testified that he is able to conduct basic conversations with Spanish speaking persons, is able to negotiate drug deals in Spanish without a translator, and comprehends more Spanish than he is capable of speaking. Special Agent Sellers speaks Spanish three to five times a week in connection with his DEA duties. In addition, he received ten weeks of intensive Spanish training in 1974, and took a conversational Spanish class for one semester while in college.

Alcarez–Ochoa and Rubio–Garcia contend that the district court erred in finding that Special Agent Sellers was able to understand Spanish at a level sufficient to confirm that Jose Garcia was translating the substance of their statements accurately. To support their argument, Alcarez–Ochoa and Rubio–Garcia direct our attention to the testimony of Edward Rock, a certified interpreter in the District Court of Arizona, who was called as a defense witness. Agent Sellers testified that Jose Garcia stated that the amount for each kilogram was "cinco cientos." Rock testified that a Spanish speaking person would not have used the phrase "cinco cientos" when negotiating for 500 kilograms. The correct translation of 500 is "quienientos." Cassell's Spanish Dictionary 495 (1978).

Rubio–Garcia's and Alcarez–Ochoa's contention assumes that individuals in the process of conducting drug negotiations always speak in accordance with formal rules of grammar, without resorting to street slang or colloquialisms peculiar to drug traffickers. The record shows that Rubio–Garcia told Special Agent Sellers that it would be "no problemo" to deliver 500 kilograms of cocaine. The grammatically correct phrase would have been "no problema." Cassell's Spanish Dictionary 486 (1978).

Rubio–Garcia contends that his subsequent actions are inconsistent with the conversations as translated. Rubio–Garcia maintains that if he were involved in a large drug operation, he would not have registered at the hotel using his own name and would have been present at the residence when the drug deal was taking place. The record shows, however, that Rubio–Garcia did not know at the time he signed the registration that Special Agent Sellers worked for the DEA. Rubio–Garcia believed he was dealing with a narcotics trafficker.

Rubio–Garcia told Special Agent Sellers that he was a partner and had responsibility for making decisions concerning the 500 kilogram deal. Rubio–Garcia informed Special Agent Sellers that 100 kilograms of cocaine would be delivered the morning of June 18th and the remainder would be delivered that afternoon. On June 18th, the conspirators delivered a total of 100 kilograms of cocaine. The events which occurred on June 18th were consistent with the substance of his statements as translated by Jose Garcia.

In this matter, Jose Garcia was acting as a middleman in order to facilitate the cocaine transaction between the co-conspirators and Special Agent Sellers. Jose Garcia had a financial interest in accurately translating the statements of Alcarez–Ochoa and Rubio–Garcia. The reliability of Jose Garcia's translations was confirmed by Special Agent Sellers through his understanding of Spanish. These facts demonstrate that Jose Garcia was acting as a language conduit for Alcarez–Ochoa and Rubio–Garcia, and for

testimonial purposes, the translations of Jose Garcia are considered to be the statements of Alcarez–Ochoa and Rubio–Garcia. Therefore, there is no Confrontation Clause or hearsay problem, and Jose Garcia's translations are admissible against the declarants as co-conspirator statements under Rule 801(d)(2)(E) of the Federal Rules of Evidence.

AFFIRMED.